GULFSTREAM PARK RACING ASSO-CIATION, INC., a Florida corporation, Plaintiff–Counter–Defendant–Appellant Cross–Appellee,

v.

TAMPA BAY DOWNS, INC., a Florida corporation, Defendant–Counter–Claimant–Appellee Cross–Appellant,

Florida Jai–Alai, Inc., et al., Intervenors–Defendants, Appellees.

No. 03–16272.

United States Court of Appeals, Eleventh Circuit.

Feb. 9, 2005.

Keith E. Rounsaville, Akerman Senterfitt, Orlando, FL, for Gulfstream Park.

Lara J. Tibbals, David T. Knight, Marie A. Borland, Hill, Ward & Henderson, P.A., James M. Landis, Jon P. Tasso, Foley & Lardner, Tampa, FL, Harold F.X. Purnell, Rutledge, Ecenia, Underwood & Purnell, P.A., Tallahassee, FL, for Tampa Bay Downs.

George L. Waas, Atty. Gen.–Dept. of Legal Affairs, Tallahassee, FL, for Intervenors.

Before BLACK, HILL and ALARCON*, Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a). TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

This case arises out of a dispute between Gulfstream Park Racing Association ("Gulfstream") and Tampa Bay Downs, Inc. ("Tampa Bay Downs") over the enforceability of certain contracts under Florida's Pari–Mutuel Wagering Act (the "Wagering Act"). Because we find that this is an unsettled question of distinct importance to the State of Florida in its

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

efforts to regulate the gambling industry, and because the Wagering Act is part of a complex and extensive regulatory scheme governing the gambling industry in the State of Florida, we certify the issue to the Supreme Court of Florida.

## I.

In Florida, pari-mutuel wagers on broadcasts or "Simulcasts" of live horse races from out-of state host tracks can be placed only at venues that have pari-mutuel wagering permits from the Florida Division of Pari–Mutuel Wagering. Prior to 1997, the State of Florida placed statutory restrictions on the number of these Simulcasts that thoroughbred racetracks in Florida could receive and disseminate to other pari-mutuel wagering sites (including other horse racing tracks, greyhound tracks, and jai alai frontons). In late 1996, however, the Florida legislature removed this limitation. Once the limitation was removed, Gulfstream began entering into "Exclusive Contracts" with various out-of-state thoroughbred racetracks that purported to grant Gulfstream the "exclusive right" to disseminate Simulcasts of the out-of-state races to the other wagering sites.

On January 27, 2003, Gulfstream sued Tampa Bay Downs in response to certain actions, which it alleged, interfered with and usurped Gulfstream's "exclusive rights" to disseminate these Simulcasts. In Count 3 of its complaint, Gulfstream sought a declaratory judgment that these exclusivity provisions were valid and enforceable in Florida because they are not prohibited by Sections 550.615(3) and 550.6305(9)(g)1 of the Wagering Act. In Count 4, Gulfstream claimed damages caused by Tampa Bay Downs' alleged breaches of provisions in the Simulcast agreements. In Count 5, Gulfstream alleged that Tampa Bay Downs intentionally interfered with Gulfstream's prospective advantageous business relationships with the pari-mutuel permit holders to which it claims the exclusive right to disseminate the Simulcasts.

Tampa Bay Downs filed a motion for summary judgment, contending that Sections 550.615(3) and 550.5305(9)(g)1 of the Wagering Act prohibit Gulfstream's exclusive agreements with the other wagering sites (Count 3), and that it was entitled to judgment on its claims for breach of contract (Count 4) and tortious interference (Count 5) as a matter of law.

Although no Florida appellate court had decided a case that considered whether the Wagering Act prohibits exclusive or restrictive provisions in Simulcast agreements between an out-of-state host track and a Florida thoroughbred guest track, the district court held that the plain meaning of the Wagering Act did prohibit such provisions, and granted summary judgment to Tampa Bay Downs on Counts 3, 4, and 5.

## II.

■ The regulation of gambling lies at the "heart of the state's police power." *Johnson v. Collins Entm't Co., Inc.,* 199 F.3d 710, 720 (4th Cir.1999). The State of Florida has stated its intention that thoroughbred horse racing and the gambling industry associated with it shall be regulated in order to "protect the public health, safety, and welfare" of the citizens of Florida. Fla. Stat. § 550.095(1). To this end, Florida's pari-mutuel industry is highly regulated. The Wagering Act is an integral part of this extensive and complex regulatory scheme.

■ Because the resolution of the issues in this case require us to interpret a Florida law that is an integral part of the state's very extensive regulatory scheme

for the pari-mutual gambling industry, we are reluctant to proceed without any guidance at all from the courts of that state. Very recently, we reaffirmed that " 'Where there is doubt in the interpretation of state law however, "a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law." ' " *Simmons v. Sonyika,* 394 F.3d 1335 (11th Cir.2004) (quoting *CSX Transp., Inc. v. City of Garden City,* 325 F.3d 1236, 1239 (11th Cir.2003) (citations omitted)). Considering the importance to the State of Florida of the integrity of its gambling regulatory scheme, and in view of the absence of guidance from its courts regarding the correct interpretation of its Wagering Act regarding such exclusivity agreements, we certify the following question to the Florida Supreme Court:

> DOES THE FLORIDA PARI-MUTU-EL WAGERING ACT PROHIBIT AN AGREEMENT BETWEEN A FLORI-DA THOROUGHBRED RACETRACK AND AN OUT-OF-STATE RACE-TRACK THAT GRANTS THE FLORI-DA RACETRACK THE EXCLUSIVE RIGHT TO DISSEMINATE THE OUT-OF-STATE TRACK'S SIMUL-CAST SIGNAL TO OTHER FLORIDA WAGERING SITES PERMITTED TO RECEIVE THEM.

### III.

This appeal raises an issue of first impression regarding the interpretation of two important sections of Florida's Wagering Act. The district court interpreted the plain language of these sections to prohibit the sort of contracts that Gulfstream claims give it the exclusive right to disseminate out-of-state Simulcasts. Because we believe that this issue should be resolved by the Florida Supreme Court, we have certified the question above. *See SCI Liquidating Corp. v. Hartford Fire Ins. Co.,* 181 F.3d 1210, 1219 (11th Cir.1999). In so doing, we do not intend to restrict the court's consideration of the issue presented. "This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." *Washburn v. Rabun,* 755 F.2d 1404, 1406 (11th Cir.1985). To assist the court in considering this question, the record in this case and the parties' briefs shall be transmitted to the court.

QUESTION CERTIFIED.